IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STORMWATER STRUCTURES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. 4:09-CV-2755 |
| | § | |
| PLATIPUS ANCHORS, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant D. Miller & Associates, PA's Motion for Summary Judgment (Docket Entry No. 33); Defendants Platipus Anchors, Inc., and Platipus Anchors, Ltd.'s Motion for Summary Judgment (Docket Entry No. 34); and Defendant Platipus Anchors, Ltd.'s Motion for Determination of Foreign Law (Docket Entry No. 46).

The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES IN PART**, **GRANTS IN PART** Defendant D. Miller & Associates, PA's Motion for Summary Judgment (Docket Entry No. 33); **DENIES** Defendants Platipus Anchors, Inc., and Platipus Anchors, Ltd.'s Motion for Summary Judgment (Docket Entry No. 34); and **DENIES** Defendant Platipus Anchors, Ltd.'s Motion for Determination of Foreign Law (Docket Entry No. 46).

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 26.

## I. Case Background

Plaintiff StormWater Structures, Inc., ("Plaintiff") initiated this action against defendants Platipus Anchors, Inc. ("Platipus Inc."), Platipus Anchors, Ltd. ("Platipus Ltd.") (collectively, "Platipus"), and D. Miller & Associates, PA ("D. Miller") (collectively, "Defendants") on August 26, 2009, pursuant to the court's diversity jurisdiction.[2]

Platipus Ltd. is a limited liability company registered in England since 1983.[3] Its internationally-marketed services included the design and manufacture of earth anchoring products.[4] Before conducting business with a prospective purchaser, the company requires the purchaser to apply for a trading account and execute a "Terms and Conditions of Sale" contract, which then governs any future purchase of goods between Platipus Ltd. and that purchaser.[5] Platipus Ltd. conducted its day-to-day United States operations through its United States Technical Advisor, Frank Milchuck ("Milchuck"), in Raleigh, North Carolina.[6] On November 22, 2006, Plaintiff opened a trading account with Platipus Ltd. and

---

[2] Original Complaint, Docket Entry No. 1.

[3] Platipus Anchors, Ltd. and Platipus Anchors, Inc.'s Motion for Summary Judgment ("Platipus' MSJ"), Docket Entry No. 34, Ex. 1, Declaration of Milchuck, ¶ 2.

[4] Id.

[5] Id. ¶ 3.

[6] Id. ¶ 4.

executed the required Terms and Conditions of Sale contract.[7]

Platipus Ltd. wished to expand its operations in the United States and so formed a United States company, Platipus Inc., on March 26, 2007, which was located in Raleigh, North Carolina.[8] Like Platipus Ltd., Platipus Inc. required a Terms and Conditions of Sale contract with its customers.[9] Plaintiff signed this contract with Platipus Inc., on July 8, 2008.[10]

The present lawsuit arises from the reconstruction of a detention pond located at the Beltway 8 Center/Food Town Shopping Center in Houston, Texas.[11] Around September 2007, the property owner hired Construction EcoServices II, Inc. ("CES") to redesign and reconstruct the existing detention pond to increase the amount of water it could hold.[12] In turn, CES hired Plaintiff to provide

---

[7] Id. ¶ 5; Ex. A, Account Application Form; Ex. B, Terms & Conditions of Sale Contract with Platipus Ltd.

[8] Id. ¶ 6; Plaintiff's Response in Opposition to Defendant Platipus Anchors, Ltd.'s Motion for Determination of Foreign Law Pursuant to Rule 44.1 ("Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law"), Docket Entry No. 50, Ex. D, Articles of Incorporation of Platipus Inc.

[9] Platipus' MSJ, Docket Entry No. 34, Ex. 1, Declaration of Milchuck, ¶ 6.

[10] Id.; Ex. C, Terms & Conditions of Sale Contract with Platipus Inc.

[11] Plaintiff's Response in Opposition to Defendant D. Miller's Motion for Summary Judgment ("Plaintiff's Response to D. Miller's MSJ"), Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 3; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶ 3. John Randall Wilkins ("Wilkins") was the President of Plaintiff StormWater Structures, Inc. Id. ¶ 1.

[12] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 4; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶ 4.

3

the design and necessary materials to change the angle of the slope of the pond's banks.[13]

Plaintiff contacted Milchuck and verbally agreed to purchase an engineered design, earth anchors, and other components to support the banks of the new detention pond.[14] Between September 28, 2007, and November 12, 2007, details on the agreement were arranged between Plaintiff and Milchuck, whose e-mails all reflected the Platipus Inc. name and its Raleigh, North Carolina, address.[15] On November 12, 2007, Milchuck, on letterhead from Platipus Inc. in Raleigh, gave a quotation for the project to Plaintiff.[16]

Milchuck hired D. Miller to provide the engineering design for the reconstruction project.[17] On November 14, 2007, D. Miller sent the completed design to Platipus Inc. at the Raleigh address; Milchuck then forwarded the design to Plaintiff.[18] Plaintiff in

---

[13] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 5; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶ 5.

[14] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 6; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶ 6

[15] Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. F, E-mails Between Plaintiff & Milchuck.

[16] Id. Ex. A, Affidavit of Wilkins, ¶ 7; Ex. B, Quotation from Milchuck.

[17] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 7.

[18] Id. ¶¶ 8-9; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. G, Slope Stability Analysis by D. Miller.

turn forwarded the design to CES, which used it to reconstruct the banks of the detention pond from the existing 3-to-1 slope to a 1-to-1 slope.[19]

On January 7, 2008, Plaintiff submitted a purchase order to "Platipus Anchors" at the Raleigh address for the design and materials, using the prices earlier quoted by Milchuck.[20] On January 21, 2008, Platipus Ltd., sent Plaintiff an invoice, on letterhead from its location in England, for payment of materials prior to shipment.[21] Throughout that spring, Plaintiff sent five checks to Platipus Ltd., using the Raleigh address.[22] In April 2008, CES completed the project, purportedly in accordance with the design created by D. Miller.[23]

In August 2008, portions of the detention pond's banks collapsed, causing damage to the slopes and adjacent sidewalks and buildings.[24] Plaintiff was required to repair the slopes, adjacent sidewalk, an underground conduit and phone lines connected to an

---

[19] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 11.

[20] Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶ 8; Ex. C, Purchase Order.

[21] Platipus' MSJ, Docket Entry No. 34, Ex. 1, Declaration of Milchuck, Ex. D, Platipus Ltd. Invoice.

[22] Id. Ex. E, Checks. The dates on the checks are March 3, 2008; April 3, 2008; April 11, 2008; April 23, 2008; and May 19, 2008. Id.

[23] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶ 12.

[24] Id. ¶ 13.

adjacent building, and the concrete footings of a staircase on an adjacent building.[25]

Plaintiff filed the present lawsuit to recover its damages incurred as a result of the allegedly negligent engineering design that led to the slope failure.[26] Plaintiff asserts claims of negligence and negligent misrepresentation against all parties, along with claims of breach of contract, breach of warranty, and violation of the Deceptive Trade Practices Act ("DTPA") against Platipus Inc. only.[27] Plaintiff requests $283,875.43, plus treble damages under the DTPA, costs, interest, and attorney's fees.[28]

Platipus Ltd. also asserts cross-claims against D. Miller for negligence and breach of contract.[29] Platipus Ltd. and Platipus Inc. both assert a counterclaim against Plaintiff for a declaratory judgment that: "(1) the Terms and Conditions of Sale, executed by and between [Plaintiff] and [Platipus Ltd.] on November 22, 2006, is the operable contract governing the parties' rights, including any dispute arising from [Plaintiff's] January 7, 2008 purchase

---

[25]   Id. ¶ 15.

[26]   Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, ¶ 4.

[27]   First Amended Complaint, Docket Entry No. 27; Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, ¶¶ 5-6; Plaintiff's Response to Platipus' MSJ, Docket Entry No. 37, ¶ 4; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, ¶ 7.

[28]   First Amended Complaint, Docket Entry No. 27, ¶¶ 26, 29, 32, 36, 39, 42.

[29]   Platipus Ltd.'s Original Answer, Counter-claim, and Cross-claim, Docket Entry No. 9, pp. 14-16.

order to [Platipus Ltd.]; and (2) the only parties to the Terms and Conditions of Sale are [Platipus Ltd.] and [Plaintiff]."[30]

## II. Platipus Ltd.'s Motion for Determination of Foreign Law

Platipus Ltd. requests a ruling that English law governs Plaintiff's breach of contract claim against it, per the Terms and Conditions of Sale contract between the two parties.[31] Platipus Ltd. further requests the court to define the substance of English law for the purposes of that claim and the related request for attorneys' fees.[32]

The court denies Platipus Ltd.'s request. While the complaint could be read to implicate Platipus Ltd. in all of the same causes of action as Platipus Inc., Plaintiff clarifies in its briefing that it is only suing Platipus Ltd. for negligence and negligent misrepresentation and for no other causes of action.[33] Therefore, Platipus Ltd.'s argument that English law governs the breach of contract claim is moot.

Accordingly, the court **DENIES** Platipus Ltd.'s motion for determination of foreign law.

## III. Defendants' Motions for Summary Judgment

---

[30] Id. at 10; Platipus Inc.'s Original Answer and Original Counter-claim, Docket Entry No. 6, p. 9.

[31] Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 46, p. 1.

[32] Id.

[33] See id. ¶ 7.

A.   **Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). The movant must inform the court of the basis for the summary judgment motion and must demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party meets its burden, the nonmoving party must demonstrate that genuine issues of material fact do exist to be resolved at trial. Celotex Corp., 477 U.S. at 324.

B.   **Summary Judgment Motion by Platipus Ltd. and Platipus Inc.**

Plaintiff asserts claims of negligence and negligent misrepresentation against both Platipus Inc. and Platipus Ltd., along with claims of breach of contract, breach of warranty, and violation of the DTPA against Platipus Inc. only.[34] Platipus Ltd. moves for summary judgment on both claims against it on the basis of the economic loss doctrine.[35] Platipus Inc. moves for summary judgment on all claims, except for breach of contract, also on the

---

[34] First Amended Complaint, Docket Entry No. 27; Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, ¶¶ 5-6; Plaintiff's Response to Platipus' MSJ, Docket Entry No. 37, ¶ 4; Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, ¶ 7.

[35] Platipus' MSJ, Docket Entry No. 34, p. 2.

basis of the economic loss doctrine.[36]

The economic loss rule bars recovery for economic damages in three independent situations: (1) when the loss is the subject matter of a contract between the parties; (2) when two parties are not in contractual privity and the tort claims are based upon pure economic loss with no accompanying physical personal or physical property damage; and (3) when a negligence claim is brought against the manufacturer or seller of a defective product where the defect results in damage only to the product and not to a person or to other property.[37] City of Alton v. Sharyland Water Supply Corp., 277 S.W.3d 132, 152 (Tex. App.—Corpus Christi 2009, pet. granted); Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 285-290 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

### 1. Plaintiff and Platipus Ltd.

Defendant Platipus Ltd. argues that the economic loss rule applies because Plaintiff seeks damages that have arisen out of the contract between the parties. In response, Plaintiff argues that there is no contract between it and Platipus Ltd., and, alternatively, that it seeks damages for injury to other property outside the purview of the contract in this case.[38]

The court first must determine whether Platipus Ltd. has

---

[36] Id.

[37] None of the parties to this lawsuit who assert the economic loss rule defense claims that the third situation applies to the facts of this case.

[38] Plaintiff's Response to Platipus' MSJ, Docket Entry No. 37, pp. 8-11.

presented evidence as a matter of undisputed fact to support its contention that there was a contract between Plaintiff and Platipus Ltd. In its opposition to summary judgment, Plaintiff submits evidence showing that there were few, if any, communications between Platipus Ltd. and Plaintiff until January 21, 2008, when Plaintiff received an invoice from Platipus Ltd.[39] Rather, the evidence shows that communications, including the negotiation, final offer, and acceptance of the terms of a contract, were on letterhead and e-mails with Platipus Inc.'s name and address.[40] Once Platipus Inc. offered Plaintiff a quotation and Plaintiff accepted that offer with its purchase order, a contract was formed with Platipus Inc., not Platipus Ltd., according to Plaintiff. After the contract was formed, Platipus Ltd. sent Plaintiff an invoice for materials, and Plaintiff paid that invoice with checks made out to Platipus Ltd.; however, these facts would not affect the terms of the contract Plaintiff had already formed with Platipus Inc. Thus, Plaintiff has raised a fact issue with respect to whether its contract was with Platipus Inc. instead of with Platipus Ltd. As Platipus Ltd. does not move for summary judgment on the ground that it was in contractual privity with Plaintiff

---

[39] Platipus' MSJ, Docket Entry No. 34, Ex. 1, Declaration of Milchuck, Ex. D, Platipus Ltd. Invoice.

[40] Plaintiff's Response to Platipus Ltd.'s Motion for Determination of Foreign Law, Docket Entry No. 50, Ex. A, Affidavit of Wilkins, ¶¶ 7-8; Ex. B, Quotation from Milchuck; Ex. C, Purchase Order; Ex. F, E-mails Between Plaintiff & Milchuck; Ex. G, Slope Stability Analysis by D. Miller;

through its contract with Platipus Inc., the court does not address whether the economic loss rule would apply in such a case.

Even if there is evidence that Plaintiff and Platipus Ltd. either held a contract or were in contractual privity with each other, the economic loss rule would not bar Plaintiff's claims for damages to property other than the subject of the contract.[41] See Coastal Conduit & Ditching, Inc., 29 S.W.3d at 285-290. "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH, 524 F.3d 676, 678 (5th Cir. 2008) (citing Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)). "Economic loss" is "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." City of Alton, 277 S.W.3d at 152 (internal quotation and citations omitted). Thus, the economic loss rule would not bar Plaintiff's claims for damages to property other than the detention pond.

Accordingly, Platipus Ltd.'s motion for summary judgment based on the economic loss rule is **DENIED**.

**2.   Plaintiff and Platipus Inc.**

Platipus Inc. also argues that the economic loss rule applies to bar Plaintiff's negligence and negligent misrepresentation

---

[41]   See Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶¶ 13, 15.

claims. The court agrees that, if the finder of fact determines that Plaintiff and Platipus Inc. entered into a contract, then the economic loss rule applies, in part.

The court examines the first situation, which, for the rule to apply, requires that the loss be the subject matter of a contract between the parties.[42] Coastal Conduit & Ditching, Inc., 29 S.W.3d 285-290. As the court has already found, Plaintiff has provided summary judgment evidence of damage to property other than the detention pond, the subject of the contract.[43] Plaintiff has provided evidence that repairs were required on the adjacent sidewalk, an underground conduit and phone lines connected to an adjacent building, and the concrete footings of a staircase on an adjacent building.[44] Therefore, the first situation under the economic loss rule does not apply to bar Plaintiff's negligence-based causes of action, at least with respect to damages to property other than the detention pond.

Accordingly, the court **DENIES** Platipus Inc.'s motion for summary judgment.

C.   **Summary Judgment Motion by D. Miller**

Plaintiff asserts claims of negligence and negligent

---

[42] The second situation under the economic loss rule does not apply here, because it requires the two parties to not be in contractual privity, and, as discussed by the court, Plaintiff has raised a fact issue with respect to its contention that it held a contract with Platipus Inc. See City of Alton, 277 S.W.3d at 152-53 (referring to "tort cases where there is an absence of privity of contract").

[43]   See id.

[44]   Id. ¶ 15.

misrepresentation against D. Miller.[45] In addition, Platipus Ltd. also asserts cross-claims against D. Miller for negligence and breach of contract.[46]

D. Miller requests summary judgment on four issues: (1) whether the economic loss doctrine bars Plaintiff's negligence and negligent misrepresentation claims to recover damages arising from economic loss to the subject of the contract between Plaintiff and Platipus; (2) whether the economic loss doctrine bars Platipus' negligence claim to recover economic losses for alleged failure to perform a contract; (3) whether Platipus Ltd.'s breach of contract claim should be dismissed for failure to make a prima facie case; and (4) whether Plaintiff's negligent misrepresentation claim should be dismissed for failure to make a prima facie case. The court addresses D. Miller's motion against Plaintiff first.

**1. D. Miller and Plaintiff**

D. Miller argues that the economic loss rule bars Plaintiff's negligence and negligent misrepresentation claims. Alternatively, D. Miller argues that there is no genuine issue of material fact preventing summary judgment on Plaintiff's negligent misrepresentation claim.

**a. Economic Loss Rule**

As discussed above, the economic loss rule bars recovery for

---

[45] First Amended Complaint, Docket Entry No. 27; Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, ¶¶ 5-6.

[46] Platipus Ltd.'s Original Answer, Counter-claim, and Cross-claim, Docket Entry No. 9, pp. 14-16. In spite of D. Miller's argument against both Platipus Inc. and Platipus Ltd., only Platipus Ltd. has asserted any causes of action against it. See id.

economic damages when the loss is the subject matter of a contract between the parties, or, when two parties are not in contractual privity, when the tort claims are based upon pure economic loss with no accompanying physical personal or physical property damage. City of Alton, 277 S.W.3d at 152; Coastal Conduit & Ditching, Inc., 29 S.W.3d at 285-290.

Neither Plaintiff nor D. Miller have argued that they are in contractual privity, so the first situation under the economic loss rule would not bar Plaintiff's claims. Further, as the court has already discussed, Plaintiff has presented some evidence of accompanying physical property damage, so the second situation does not apply.[47] Thus, the economic loss rule does not bar Plaintiff's negligence or negligent misrepresentation claim against D. Miller.

Accordingly, the court **DENIES** D. Miller's motion for summary judgment with respect to Plaintiff's negligence and negligent misrepresentation claims.

### b. Negligent Misrepresentation

D. Miller also moves for summary judgment on Plaintiff's claim of negligent misrepresentation, claiming that Plaintiff has no evidence to support this cause of action.

To establish a claim of negligent misrepresentation under Texas law, the claimant must show four elements: (1) the representation was made by the defendant in the course of its business; (2) the defendant supplied "false information" to guide

---

[47] See Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶¶ 13, 15.

others in their business; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the claimant suffered pecuniary loss by justifiably relying on the defendant's representation. Ameen v. Merck & Co., Inc., 226 Fed App'x 363, 374 (5th Cir. 2007) (unpublished) (citing Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)).

D. Miller contends that Plaintiff fails to meet the second and third elements, because: (1) D. Miller did not provide false information, and (2) because D. Miller used reasonable care in obtaining and communicating the information.[48] Plaintiff points to the engineered design created by D. Miller as the representation, averring that D. Miller falsely represented that the design was "complete."[49]

Plaintiff cites to four "design inadequacies" by which it avers that the representation of being "complete" was false: (1) the design failed to make and account for all appropriate calculations in the design, including rapid drawdown or long term conditions; (2) the design failed to specify a sufficient number of anchors to properly stabilize the detention pond slope; (3) the design failed to take into account an accurate reflection of the applicable soil properties; and (4) D. Miller failed to ask for additional information and/or documentation, if any was necessary,

---

[48] D. Miller's MSJ, Docket Entry No. 33, p. 16.

[49] Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, ¶ 35.

to properly engineer a stable slope for the detention pond.[50]

A negligent misrepresentation claim must deal with a misstatement of an existing fact, not a promise of future conduct. Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 314 (5th Cir. 2007) (internal quotation marks omitted) (applying Texas law and quoting Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc., 88 F.3d 347, 357 (5th Cir. 1996) (applying Texas law)); Roof Sys., Inc. v. Johns Manville Corp., 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.). It is not enough that a defendant made "a guess as to a future, unknown event." Clardy Mfg. Co., 88 F.3d at 357 (quoting Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc., 861 F. Supp. 1351, 1360 (S.D. Tex. 1994) (holding that, under Texas law, a representation that a barge could be loaded in under twenty-four hours was not actionable under a negligent misrepresentation theory); see also City of Beaumont v. Excavators & Constructors, Inc., 870 S.W.2d 123, 138 (Tex. App.—Beaumont 1993, writ denied) (holding that statements with respect to how long it would take to complete a project were not "false information").

The court first notes that Plaintiff has clearly overreached the bounds of the meaning of the statement at issue. The exact language employed by D. Miller was, "As requested, [D. Miller] has completed the slope stability analysis for the existing slope located at the subject site."[51] This sentence means that D. Miller had finished its analysis, not that it was warranting that there

---

[50] Id. ¶¶ 32-44.

[51] Id. Ex. C, Slope Stability Analysis, p. 1.

were no design inadequacies or that all possible types of analyses had been performed to arrive at the finished product.

However, assuming that Plaintiff's strained interpretation has some merit, Plaintiff's claim still fails as a matter of law because it has not provided summary judgment evidence showing that D. Miller gave it false information.

Examining the evidence in a light most favorable to Plaintiff, all of Plaintiff's complaints with respect to the plans provided by D. Miller involve D. Miller's opinion and belief as to how to conduct a proper analysis based on the available information. D. Miller made "a guess as to a future, unknown event," i.e., that, based on the information at its disposal, the design would work. See Sergeant Oil & Gas Co., 861 F. Supp. at 1360. Simply providing an analysis that was, in retrospect, allegedly inadequate because it was not performed in a particular way cannot be considered "false information."[52] Thus, Plaintiff's claim fails on the second element.

Accordingly, the court **GRANTS** D. Miller's motion for summary judgment with respect to Plaintiff's claim of negligent misrepresentation.

### 2. D. Miller and Platipus Ltd.

D. Miller argues that the economic loss rule bars Platipus Ltd.'s negligence claim. In addition, D. Miller argues that there is no genuine issue of material fact preventing summary judgment on

---

[52] There is no claim of and no evidence to the effect that D. Miller represented that it performed certain types of analysis that, in fact, it never did.

Platipus Ltd.'s breach of contract claim.

### a.   Economic Loss Rule

As the court has stated, the economic loss rule bars recovery for economic damages when the loss is the subject matter of a contract between the parties, or, when two parties are not in contractual privity, when the tort claims are based upon pure economic loss with no accompanying physical personal or physical property damage.  City of Alton, 277 S.W.3d at 152; Coastal Conduit & Ditching, Inc., 29 S.W.3d at 285-290.

The first situation under the economic loss rule does not apply here, because, although the court assumes for this motion that Platipus Ltd. and D. Miller were in privity, the injuries here are not only the economic loss to the subject of a contract itself; rather, there is accompanying physical property damage.[53]  Second, because there is evidence that D. Miller and Platipus Ltd. are in contractual privity, the second situation requiring non-contractual privity does not apply.  Thus, the economic loss rule does not bar Platipus Ltd.'s negligence claim against D. Miller.

Accordingly, the court **DENIES** D. Miller's motion for summary judgment with respect to Platipus Ltd.'s negligence claim.

### b.   Breach of Contract

D. Miller moves for summary judgment on Platipus Ltd.'s breach of contract claim, claiming that Platipus Ltd. has no evidence that

---

[53]   See Plaintiff's Response to D. Miller's MSJ, Docket Entry No. 35, Ex. A, Affidavit of Wilkins, ¶¶ 13, 15.

D. Miller breached the contract.[54]

Platipus Ltd. states that its contract with D. Miller required D. Miller to generate a design that was adequate for Plaintiff's project, i.e., a design that properly engineered the slopes of the detention pond and that accounted for water filling and draining out of the pond within a short span of time.[55]

In support of its claim that D. Miller breached this contract, Platipus Ltd. points to the affidavit of Plaintiff's geotechnical engineering expert Fouad Hammoud, P.E. ("Hammoud").[56] After reviewing D. Miller's design, Hammoud opined that D. Miller failed to make an adequate design in accordance with the contract's requirements because it failed: (1) "to make and account for all appropriate calculations in the design, including rapid drawdown or long term conditions;" (2) "to specify a sufficient number of anchors to properly stabilize the detention pond slope;" (3) to take into account the accurate properties of the soil; and (4) "to ask for additional information and/or documentation if any was necessary to properly engineer a stable slope for the detention

---

[54] D. Miller's MSJ, Docket Entry No. 33, pp. 14-15. The court emphasizes that there is some question in this case with respect to whether Platipus Inc. or Platipus Ltd. was party to Plaintiff's contract and whether the subsequent subcontract with D. Miller was with Platipus Inc. or Platipus Ltd. This will have to be resolved at trial. The court determined earlier that Plaintiff has provided summary judgment evidence supporting its contention that it held a contract with Platipus Inc., and not Platipus Ltd. However, for the sole purpose of deciding D. Miller's motion for summary judgment against Platipus Ltd., the court will assume that Platipus Ltd. was the party to the contract with D. Miller, the subcontractor, as Platipus Ltd. avers.

[55] Defendant Platipus Anchors, Ltd.'s Response in Opposition to D. Miller's Motion for Summary Judgment ("Platipus Ltd.'s Response to D. Miller's MSJ"), Docket Entry No. 36, ¶ 26.

[56] Id. Ex. 4, Certificate of Merit of Fouad Hammoud, P.E.

pond."[57]

In spite of evidence submitted to the contrary by D. Miller, Hammoud's affidavit provides sufficient summary judgment to support Platipus Ltd.'s claim that D. Miller breached the contract.[58]

Accordingly, the court **DENIES** D. Miller's motion for summary judgment with respect to Platipus Ltd.'s breach of contract claim.

Therefore, D. Miller's motion for summary judgment is **DENIED IN PART**, **GRANTED IN PART**.[59]

### IV. Conclusion

Based on the foregoing, the court **DENIES IN PART**, **GRANTS IN PART** Defendant D. Miller & Associates, PA's Motion for Summary Judgment (Docket Entry No. 33); **DENIES** Defendants Platipus Anchors, Inc., and Platipus Anchors, Ltd.'s Motion for Summary Judgment (Docket Entry No. 34); and **DENIES** Defendant Platipus Anchors, Ltd.'s Motion for Determination of Foreign Law (Docket Entry No. 46).

**SIGNED** in Houston, Texas, this 24th day of January, 2011.

Nancy K. Johnson
United States Magistrate Judge

---

[57] Id. ¶ 8.

[58] See Platipus Ltd.'s Response to D. Miller's MSJ, Docket Entry No. 36, p. 9.

[59] Thus, as against D. Miller, Plaintiff's claim of negligence and Platipus Ltd.'s claims of breach of contract and negligence are the only causes of action to survive summary judgment.